# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VINCENT J. KROCKA**,<br><br>Plaintiff,<br><br>v.<br><br>**EXECUTIVE OFFICE FOR UNITED STATES ATTORNEYS, *et al.*,**<br><br>Defendants. | Case No. 17-cv-2171-CRC |

## MEMORANDUM OPINION

Federal inmate Vincent Krocka brings this action against the Executive Office for United States Attorneys ("EOUSA") and its Assistant Director for alleged violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and breach of contract. Krocka lodged a FOIA request with EOUSA in November 2015 for documents maintained by the United States Attorney's Office for the Middle District of Florida related to his criminal case and a related habeas action. He seeks transcripts and other materials that he says will prove his innocence, or at least show that he did not receive a fair trial. Krocka Opp'n, ECF No. 24, ¶ 1. EOUSA provided Krocka 787 pages of responsive records, including 354 pages of transcripts. Not satisfied, Krocka sued and both parties have now moved for summary judgment. For the reasons that follow, the Court will grant the government summary judgment regarding its withholdings and reserve judgment regarding the adequacy of the search.

## I.  Background

In October 2008, a jury in the Middle District of Florida convicted Mr. Krocka of ten counts of sending threatening or extortionate communications to his ex-wife, and six counts of witness tampering. Gov't Statement of Undisputed Material Facts ("SUMF"), ECF No. 22-5,

¶ 1. After the district court set aside two of the convictions and the Eleventh Circuit reversed two others, id. ¶¶ 2–3, Krocka was sentenced to 121 months in prison, id. ¶ 4. In June 2014, he filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, which was denied. Id. ¶ 5.

In November 2015, Krocka submitted a FOIA request to EOUSA for all investigative documents, communications, and other records related to his federal criminal and habeas cases maintained by either EOUSA or the United States Attorney's Office for the Middle District of Florida ("USAO"). Compl. Ex. C, ECF No. 1. His briefing clarifies that he is particularly focused on the "complete and unredacted hard copies of the entire trial transcript and both pre-trial and post-trial transcripts as well as the so called 'missing' trial audio tape of the actual trial in his criminal case . . . , and the audio tapes of any hearings and proceedings occurring in 2012 and thereafter." Krocka Opp'n ¶ 6.

In response to Krocka's request, EOUSA asked the USAO to search for responsive records. Smith Decl., ECF No. 22-3, ¶ 7. The USAO did so, and found Krocka's physical and electronic files. Hoobler Decl., ECF No. 22-4, ¶ 10. It recovered two § 2255 case files; neither contained responsive documents. Id. ¶ 12. Krocka's criminal case file yielded three boxes (around 6,000 pages) of potentially responsive records. Id. ¶ 13. Finally, the four Assistant U.S. Attorneys ("AUSAs") who worked on Krocka's case were directed to search their e-mail for any responsive documents. Id. ¶ 17.

In December 2015, EOUSA informed Krocka by letter that he must make an advance payment of $295 before it would continue processing his FOIA request. Smith Decl. Ex. 1, ECF No. 22-3, at 15. The office also explained that Krocka could instead opt to receive the first 100 pages of responsive documents for free. Id. EOUSA closed Mr. Krocka's request when he did

not respond to the letter within 30 days. Smith Decl. ¶ 10. In May 2016, EOUSA received a letter signed by "Michael Sperber POA for Vincent Krocka," enclosing a check for $295. Id. ¶ 11. EOUSA then reopened Krocka's FOIA request. Id. ¶ 12.

EOUSA staff asked the USAO to submit potentially responsive materials. Id. ¶ 13. Pursuant to internal policy, EOUSA "directed the USAO not to submit grand jury records, records sealed by court order, or public records other than trial or sentencing transcripts." Hoobler Decl. ¶ 15. The USAO sent EOUSA 676 pages of non-public records, a 116-page sentencing transcript, and twelve discs—one containing 238 pages of excerpted trial transcripts and the rest containing audio files of jail calls made by Krocka. Id. ¶ 16. Pursuant to the EOUSA directive, "[m]ore than 2,000 pages of public records, including routine district court motions, briefs, and appellate court records, were not submitted to the FOIA staff" at EOUSA. Id. The USAO also withheld "presentence reports, grand jury materials, and records sealed by order of the district court." Id.

EOUSA then processed the records and released responsive, non-exempt materials. Krocka received 787 pages, which included 433 pages of non-public records and 354 pages of public records consisting of the trial and sentencing transcripts. Smith Decl. ¶ 21. EOUSA also released twelve pages of records that were partially redacted. Id. The agency withheld seven categories of documents—231 pages—as exempt. Id. ¶ 231.

After Krocka filed suit, the USAO discovered eleven additional discs that it had not previously provided to EOUSA. Id. ¶ 27. Those discs were marked as government exhibits and contain recorded jail calls. Three were admitted during Krocka's trial. An attorney-advisor for EOUSA has contacted the Bureau of Prisons to determine whether Krocka may have those discs where he is incarcerated or whether there is someone who can accept them on his behalf. Id.

3

¶ 28.[1] EOUSA withheld the remaining eight discs, which were marked but not admitted at his trial, for the same reason as the original eleven: privacy and safety concerns for the third parties recorded on the calls. Id. ¶ 29.

Both parties have moved for summary judgment. Those motions are ripe and ready for the Court's review.

## II. Standard of Review

FOIA cases are typically resolved on summary judgment. See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

FOIA requires an agency to conduct an adequate search for responsive documents. An adequate search is one "reasonably calculated to uncover all relevant documents." Morley v. CIA, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting Weisberg v. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). In assessing the adequacy of the search, a court focuses on the methods and scope of the search, not its fruit. Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003). To obtain summary judgment on the adequacy of its search, the agency must "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Agencies can make this showing through affidavits describing the search with "reasonable detail." Id. Such affidavits

---

[1] Krocka claims he has not received these discs. Krocka Opp'n ¶ 14. The government shall inform the Court whether it has provided the discs to Krocka or his representative in the supplemental declaration ordered below.

4

are "accorded a presumption of good faith [and] cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks, citation omitted).

In addition to demonstrating that it conducted an adequate search, the agency must also justify any withholdings made pursuant to a FOIA exemption. Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009). Again, an agency may rely on affidavits providing sufficient detail regarding the basis for withholding. But, because the primary purpose of FOIA is disclosure, courts construe the exemptions "narrowly." DiBacco v. U.S. Army, 795 F.3d 178, 183 (D.C. Cir. 2015) (quoting Milner v. Dep't of Navy, 562 U.S. 562, 565 (1989)).

### III. Analysis

#### A. Adequacy of EOUSA's search

Krocka first challenges the adequacy of the search. Although he does not squarely contest where the government searched, the Court will construe his *pro se* challenge as one encompassing that aspect of the search's adequacy. The declarations provided by Theodore Smith, an EOUSA Attorney-Advisor, and Megan Hoobler, a paralegal specialist in the Middle District of Florida USAO, detail the who, what, when, and where of the search the USAO and EOUSA conducted. The agency searched locations reasonably likely to contain responsive documents: the USAO's physical and electronic case files pertaining to Krocka's cases as well as the e-mails of the AUSAs who handled those cases. Hoobler Decl. ¶¶ 10, 17. Those locations most likely exhausted the places where Krocka's files might be found. The agency does not, however, say the "magic words" that it "searched *all* locations likely to contain responsive documents." Huntington v. U.S. Dep't of Commerce, 234 F. Supp. 3d 94, 103 (D.D.C. 2017) (quoting Bartko v. Dep't of Justice, 167 F. Supp. 3d 55, 64 (D.D.C. 2016)). While an agency

5

need not search every record system, it must "aver[] that all files likely containing responsive materials (if such records exist) were searched." Oglesby, 920 F.2d at 68. EOUSA's assertions that it searched Krocka's electronic and physical case files and the AUSAs' e-mails "may come close, but they ultimately do not pass muster." Huntington, 234 F. Supp. 3d at 104. Accordingly, the Court will reserve judgment on the adequacy of EOUSA's search pending submission of a supplemental declaration indicating whether the agency searched *all* files and locations likely containing responsive material.

What Krocka does squarely dispute is the completeness of the records he received. He claims he still doesn't have unredacted transcripts from his trial and other proceedings or the "missing" audio recording of the trial. He believes EOUSA improperly withheld those materials pursuant to its policy of not providing public documents to FOIA requesters unless specifically asked. Krocka Am. Mot. Summ. J. ("Krocka MSJ"), ECF No. 26, ¶¶ 8–9; Krocka Opp'n, ¶¶ 7–9.[2] But it appears that Mr. Krocka misunderstands the reason the agency did not provide him with all the transcripts and recordings he seeks. According to the agency, it followed the public-records policy by producing transcripts found in Krocka's case files: the 238 pages of excerpted trial transcripts and the 116-page sentencing transcript. Gov't Reply, ECF No. 29, at 2. In its reply, the agency also says it could not produce a copy of the court reporter's audio recording of the trial—which typically are the property of the court reporter—because it does not have one.

---

[2] Although he challenges its application in his case, Krocka does not challenge EOUSA's general policy of construing FOIA requests as seeking only non-public information unless specifically requested. Fellow courts in this district have approved this approach. In Cunningham v. Holder, 842 F. Supp. 2d 338 (D.D.C. 2012), for instance, the court concluded that a "requirement of a specific request for public records [] makes sense" in light of FOIA's statutory requirement to "make records promptly available" and the fact that "public records can generally be released more quickly" than non-public ones. Id. at 346–47 (citing McLaughlin v. Dep't of Justice, 598 F. Supp. 2d 62, 66 & n.2 (D.D.C. 2009)).

6

Id.  But again, the agency fails to specify something: whether these transcripts were the only transcripts in its possession or whether there were others that were withheld pursuant to the public-records policy.  If the former, the agency's representations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  SafeCard Servs., Inc., 926 F.2d at 1200 (internal quotation marks, citation omitted).

The Court will thus reserve judgment on the adequacy of the agency's search.  EOUSA is directed to file a supplemental declaration within fourteen (14) days of this opinion attesting to the scope of its search and whether it provided Krocka with all transcripts in its possession.  As indicated in footnote 1 above, that declaration should also address the status of the three discs admitted during Krocka's criminal trial.  Mr. Krocka will have fourteen (14) days thereafter to respond to that declaration.

B. Withholdings

EOUSA fully withheld seven categories of documents: (1) records sealed by court order; (2) draft filings; (3) recorded jail calls between Krocka and third parties; (4) letters from third-party witnesses and federal inmates to prosecutors; (5) factual backgrounds prepared by law enforcement officials; (6) e-mails between prosecutors and law enforcement officers regarding the case; and (7) grand jury materials.  The agency also redacted names, contact information, and/or other personally identifying information on twelve pages of documents released to Mr. Krocka.

Krocka does not challenge two of these sets of withholdings at all: 153 pages of records (including medical records and a presentence report) that had been sealed by court order, Smith Decl. ¶ 16; Hoobler Decl. ¶ 19, and two draft pleadings withheld under Exemption 5 as attorney

work product, Smith Decl. ¶¶ 24(g), 24(h); Vaughn Index, ECF No. 22-2, at 6 (Bates Stamp Nos. 228–29). The remainder of this section addresses the withholdings and redactions that Krocka does challenge.

 1. *Recorded jail calls*

The agency withheld eleven CDs of recorded jail calls between Krocka and third parties on the ground that they contain information exempt from disclosure under Exemption 6, which protects against unwarranted invasions of personal privacy, and Exemption 7(D), which protects confidential sources and the information they provide to law enforcement. Smith Decl. ¶ 25; see also Vaughn Index at 10–11. The Court need only discuss Exemption 7(D). That exemption applies to information compiled for law-enforcement purposes that "could reasonably be expected to disclose the identity of a confidential source" as well as "information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D); Parker v. Dep't of Justice, 934 F.2d 375, 380 (D.C. Cir. 1991). A source is confidential within the meaning of this exemption if the source "provided information under an express assurance of confidentiality or in circumstances from which an assurance could be reasonably inferred." Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (quoting Dep't of Justice v. Landano, 508 U.S. 165, 170–74 (1993)). Krocka challenges these withholdings because, he says, the third parties "effectively waived any privacy right" when they chose to speak with Krocka knowing that jail calls were monitored. Krocka Opp'n ¶ 13. But Krocka's focus on the third parties is misplaced. The government avers that it was the local sheriff's office and jail that "provided the recorded jail calls to federal law enforcement authorities based upon an assurance that the recorded calls would not be disseminated further." Vaughn Index at 11. The D.C. Circuit has concluded that investigative information shared by local law enforcement "with the FBI on the understanding that the FBI

8

would not disclose it to the public, particularly because to do so might reveal the identity of sources," was properly withheld under Exemption 7(D). See Williams, 69 F.3d 1159–60. Consistent with Williams, the Court concludes that EOUSA properly withheld these eleven CDs pursuant to FOIA Exemption 7(D).

   2. *Letters*

The agency also withheld under Exemption 7(D) three letters from individuals who it says corresponded with the AUSA handling Krocka's criminal case with an implied assurance of confidentiality.[3] Smith Decl. ¶¶ 24(c), (d), (e); Vaughn Index at 3–4 (citing Bates Stamp Nos. 222–26). "An implied assurance of confidentiality may be inferred from evidence showing the circumstances surrounding the imparting of the information, including the nature of the criminal investigation and the informant's relationship to the target." Love v. Dep't of Justice, No. 13-cv-1303, 2015 WL 5063166, at *6 (D.D.C. Aug. 26, 2015) (citing Landano, 508 U.S. at 172). The "pertinent question" when evaluating the nature of the criminal investigation "is whether the violence and risk of retaliation that attend the[e] type of crime [involved] warrant an implied grant of confidentiality for such a source." Mays v. DEA, 234 F.3d 1324, 1329 (D.C. Cir. 2000). In Love, for example, the court had "little doubt that [the] source's confidentiality, if not expressed, was reasonably implied" because the defendant was charged with and convicted of solicitation of murder for hire of two of the state's witnesses in a separate drug-possession case. 2015 WL 5063166, at *6. Here, too, the Court has little doubt that the authors of these letters provided information to the AUSA under an implied assurance of confidentiality. Mr. Krocka was charged with and convicted of witness tampering and sending threatening and extortionate

---

[3] Because the Court concludes that EOUSA properly withheld these letters under Exemption 7(D), it does not reach the agency's arguments regarding Exemptions 6 and 7(C).

9

communications, SUMF ¶ 1, crimes which by definition expose cooperating witnesses to a risk of retaliation and violence. And while Krocka argues that the agency could have redacted "all personal identifying information" before releasing the letters, Krocka Opp'n ¶ 12, Exemption 7(D) protects both the identity of confidential informants and the information they provide, Parker, 934 F.2d at 380. Therefore, as the government explains, it would not be enough "to simply redact the name of the author." Gov't Reply at 2. The Court thus concludes that the agency properly withheld the entirety of these letters under Exemption 7(D).

### 3. Factual summaries and timelines

Next, the agency withheld under Exemption 5 two factual summaries created by prosecutors and investigators in preparation for criminal proceedings against Krocka. Smith Decl. ¶¶ 24(a), (b); Vaughn Index at 1–2 (citing Bates Stamps Nos. 1–221). "Exemption 5 permits an agency to withhold materials normally privileged from discovery in civil litigation against the agency." Tax Analysts v. IRS, 117 F.3d 607, 617 (D.C. Cir. 1997). Exemption 5 encompasses the work-product doctrine, which shields materials "prepared in anticipation of litigation," including "factual materials." Id. at 620. "Any part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under [E]xemption 5." Id. This doctrine "can apply to preparatory work performed not only by attorneys, but also, in some circumstances by nonlawyers." Shapiro v. Dep't of Justice, 969 F. Supp. 2d 18, 28 (D.D.C. 2013) (citing United States v. Nobles, 422 U.S. 225, 238–39 (1975)).

EOUSA properly withheld these summaries in full under the work-product doctrine. The agency avers that these documents were prepared in anticipation of Krocka's criminal prosecution, and Krocka does not contend otherwise. See Vaughn Index at 1–2 (explaining that

documents were prepared by "prosecutors and investigators working with and at the direction of the prosecutions" and were "used by the prosecutor in preparing for and conducting legal proceedings during the prosecution of the requester"). Instead, he again asserts that "any identifying information concerning 3rd parties is capable of being redacted, but the Plaintiff is entitled to know what the 'facts' contained in this document" are. Krocka Opp'n ¶ 11. In other words, he appears to argue that the agency failed to provide "[a]ny reasonably segregable" information contained in these factual backgrounds pursuant to 5 U.S.C. § 552(b). But as the agency explains, it was under no obligation to segregate any information from these materials: "If a document is fully protected as work product"—that is, if it was prepared in anticipation of litigation as these factual backgrounds were—"then segregability is not required." Judicial Watch, Inc. v. Dep't of Justice, 432 F.3d 366, 371 (D.C. Cir. 2005).

*4. E-mails regarding prosecution*

The agency also withheld as work product under Exemption 5 three e-mails between AUSAs and law-enforcement personnel about the prosecution. Smith Decl. ¶¶ 24(f), (i), (j); Vaughn Index at 6–7 (citing Bates Stamp Nos. 227, 230–31). Krocka challenges the withholding of just one of these documents—Bates Stamp Number 231—again on the basis that the government could "easily and readily" redact "all personal identifying information." Krocka Opp'n ¶ 12. But as with the factual summaries, EOUSA was not required to segregate some of the information in these e-mails, which are fully protected as work product. According to the Vaughn Index, Bates Stamp Number 231 is a series of e-mails exchanged on May 15, 2008 between an AUSA, USAO support staff, and a law enforcement officer about "memoranda prepared by attorneys for the United States" "regarding subpoena for records." Vaughn Index at 7. Krocka does not dispute that assertion of the work-product doctrine, only that the agency did

11

not segregate some information. Accordingly, the Court concludes that the agency properly withheld these e-mails pursuant to Exemption 5 and was not required to produce redacted versions.

### 5. *Grand jury materials*

Next, EOUSA withheld 300 pages of grand jury materials under FOIA Exemption 3. Smith Decl. ¶ 17; Vaughn Index at 13. Exemption 3 covers records "specifically exempted from disclosure by statute . . . provided that such statute [either] (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The D.C. Circuit has explained that "requests for documents related to grand jury investigations implicate FOIA's third exemption, because Rule 6(e) of the Federal Rules of Criminal Procedure prohibits government attorneys and others from 'disclos[ing] a matter occurring before the grand jury.'" Lopez v. Dep't of Justice, 393 F.3d 1345, 1349 (D.C. Cir. 2005) (quoting Fed. R. Crim. P. 6(e)(2)(B)). The Circuit has cautioned, however, that there is no *per se* rule against disclosure of information related to grand jury investigations; rather, the "relevant inquiry . . . is whether disclosure of the information requested would 'tend to reveal some secret aspect of the grand jury's investigation, such as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like.'" Id. (quoting Senate of the Commonwealth of Puerto Rico v. Dep't of Justice, 823 F.2d 575, 582 (D.C. Cir. 1987)).

The 300 or so pages of withheld grand jury materials consist of transcripts of witness testimony, exhibits, filings containing materials submitted *in camera*, and returned subpoenas. Hoobler Decl. ¶ 18. These materials clearly would "tend to reveal some secret aspect" of the

grand jury's investigation: the transcripts would reveal the identities of witnesses and the substance of their testimony, and the exhibits and filings would reveal the strategy and direction of the investigation. And "all grand jury subpoenas . . . fall within FOIA's third exemption." Lopez, 393 F.3d at 1350. The Court therefore concludes that the agency properly withheld the grand jury materials pursuant to Exemption 3.

      *6. Redactions*

And last, EOUSA relied on Exemption 7(C) to partially redact twelve pages of documents released to Mr. Krocka: the hand-printed surname of a third party, see Vaughn Index at 8 (Bates Stamp No. 232); the e-mail address of a non-supervisory AUSA from an e-mail of a law enforcement officer to the AUSA regarding attendance at an upcoming sentencing, id. at 9 (Bates Stamp No. 233); the e-mail addresses of non-supervisory AUSAs from an e-mail between AUSAs regarding attendance at an upcoming sentencing, id. (Bates Stamp No. 234); and the names, contact information, and other personally identifiable information of third parties from fax cover sheets from a private detention facility to the Postal Inspector, which were attached to letters sent by Krocka, id. at 10 (Bates Stamp Nos. 235–43).

Krocka does not challenge these redactions explicitly. Instead, he lists these documents when arguing in general that the government should be required to provide copies of documents "redacting any and all names of 3rd parties providing information to investigators but providing unredacted content to the Plaintiff." Krocka Opp'n at 17; see also id. ¶ 32. But that is precisely what the government did with respect to this category of documents that were partially redacted and released. The Court therefore concludes that these redactions were proper.

C. Breach of contract claim

Finally, Krocka argues that he entered into a binding contract with EOUSA by paying the requested $295 for duplication costs. Krocka MSJ ¶ 19; Krocka Opp'n ¶ 23. He contends that EOUSA breached this contract by failing to release the promised 6,000 pages of records.

EOUSA could not have breached what did not exist. The parties did not enter into a binding contract for 6,000 pages of records in exchange for Krocka's $295 because their interactions lack the basic hallmarks of a contractual relationship: mutual assent to all essential terms of the contract and intent to be bound. See Henke v. U.S. Dep't of Commerce, 83 F.3d 1445, 1450 (D.C. Cir. 1996). EOUSA's December 2015 letter to Krocka explained that 6,000 was just an approximate number of pages found and emphasized that "not all of these pages are likely to be released to you." Gov't MSJ, Ex. 3, at 15. Instead of forming a binding contract, the letter simply clarified for Krocka the requirements he would need to meet—providing in advance the approximate cost of duplication under federal law, see 5 U.S.C. § 552(a)(4)(A)—in order for the agency to respond to his FOIA request. In addition, Krocka will be refunded any balance if the actual duplication costs are less than $295, unless offset by some other debt that he owes the federal government. Gov't Reply at 3 n.2; Hudgins Decl. ¶¶ 6–7.

Accordingly, the Court will grant the government summary judgment on Krocka's contract claim as well.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment in part. The Court will reserve judgment on the adequacy of the agency's search pending submission of the supplemental declaration discussed above. A separate Order shall accompany this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: February 19, 2019